UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

                Plaintiff,                Case No.:     1:06-CR-178

                                    HON. ROBERT HOLMES BELL

TOD ALLEN MARSH,

                Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

## I.   Introduction

The Defendant respectfully requests that the Court fashion a sentence for Mr. Marsh that is sufficient, but not greater than necessary, to accomplish the objectives set forth in 18 U.S.C. § 3553. In doing so, the Defendant asks the Court to consider:

(1)    Mr. Marsh has been extremely cooperative and forthright with the government, allowing the government to search his computers and readily admitting his role in the instant offense, while also providing information to the government regarding other possible crimes;

(2)    Mr. Marsh fully accepts responsibility for and truly regrets his actions. He is deeply ashamed of and has been publicly humiliated by his behavior;

(3)    Mr. Marsh has virtually no criminal history, except for his failure to pay child support, due to his lack of financial inability to do so, and this offense did not occur until after his 39th birthday;

(4)    There is no suggestion that Mr. Marsh poses a threat to the public's safety. His criminal history is devoid of any crimes of violence and his brother described him as having a "great heart";

1

(5)     Mr. Marsh's advisory guideline range is too harsh i.e., greater than necessary, to accomplish the sentencing objectives set forth 18 U.S.C. § 3553(a).

## II.    The Sentencing Factors

Following the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the U.S. Sentencing Guidelines are "effectively advisory." *Id*. at 757.  Instead of being bound by the Guidelines, the Court is directed to consider a number of factors in fashioning a sentence.  This includes:  (1) taking the defendant's Guideline range into account, (2) achieving the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2); and, (3) considering all of the factors set forth in 18 U.S.C. §§ 3553(a)(1)-(7).

The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).  Section 3553(a)(2) states:

(2)     the need for the sentence imposed—
    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)     to afford adequate deterrence to criminal conduct;
    (C)     to protect the public from further crimes of the defendant; and
    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition to subsection (a)(2), the Court is directed to consider the factors set forth in 18 U.S.C. § 3553(a)(1) and (3)-(7).  These factors are:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
(3)     the kinds of sentences available;
(4)     the kinds of sentence and the sentencing range established for–
    (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . .;
(5)     any pertinent policy statement. . .;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims in the offense.

Other statutory sections also give the Court direction in sentencing.  Title 18 U.S.C. § 3582(a) ("Imposition of a sentence of imprisonment–(a) Factors to be considered in imposing a term of imprisonment"), directs the Court to consider the factors listed in § 3553 factors and recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." (emphasis added).  Additionally, 18 U.S.C. § 3661 ("Use of information for sentencing") expressly permits the Court to consider "the background, character, and conduct" of a defendant in determining an appropriate sentence.  In light of *Booker*, a strong argument can be made that this statutory language overrides the now-advisory policy statements in Part H of the sentencing guidelines, which lists a variety of factors that are  "not ordinarily relevant" to sentencing, such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1 and *United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.).

### III.    Application of the Sentencing Factors to Mr. Marsh's Case

**A.    Title 18 U.S.C. §3553(a)**

**1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Mr. Marsh pleaded guilty to violating 18 U.S.C. § 2252(a)(4)(B), which is an offense commonly known as "Possession of Child Pornography."  By definition, this is a serious and abhorrent offense.  While this is certainly aberrant behavior, understanding Mr. Marsh's history

and characteristics may assist the Court in understanding the nature and circumstances of the offense and, consequently, fashioning a reasonable sentence.

During his interview with Probation and Pretrial Services and counsel, Mr. Marsh explained that the images served as a surreal distraction from his more pedestrian problems, i.e., his recent divorce and financial problems.  Because these problems weighed heavily on him, he sought out a potent distraction.  Because this imagery is so taboo, it was a potent, yet reprehensible, distraction.

Unfortunately, at the time of offense, Mr. Marsh never viewed his actions as anything more than that.  While he acknowledges that he knew what he was doing was wrong; to him, viewing the images was only a form of escapism, perverted though it may be, rather than a reflection of his desire to actually engage in any such activity.  These averments by Mr. Marsh are supported by the investigation that ensued.  There is no indication that he ever attempted to chat with or contact any minors or expressed any desire to do so, despite a forensic review of all of the computers to which he had access at the time of the offense and an F.B.I. investigation of the people with whom he exchanged images.  Nor have any allegations surfaced that suggest Mr. Marsh poses a threat to anybody, including minor children.  In fact, the subsequent investigation by U.S. Probation revealed that, according to Mr. Marsh's brother, Tracy Marsh, Mr. Marsh's does not pose a threat to any children, including his own.

None of this is meant to excuse Mr. Marsh's conduct.  Instead, the explanation offered above is meant to shed light on the nature and circumstances of the offense and, perhaps most importantly, highlight what he has not done.  Mr. Marsh readily admits what he did was wrong.

It is abhorrent.  He is deeply ashamed of his actions.  As a result, he has been publicly humiliated and lost everything dear to him.

Yet, Mr. Marsh wants to be a good father and become a productive member of society again.  His personal history and characteristics suggest he is a good candidate to do so. Other than the instant offense, he has a lot going for him.  He has overcome adversity before.  When he was four years old, he lost his father in a tragic auto accident.  Despite this loss, his mother remarried and raised a big, if not close, family.  Like Mr. Marsh, his siblings are hardworking with white collar jobs.

Mr. Marsh has demonstrated that he is willing to work hard, perhaps to a fault.  In fact, Mr. Marsh accepts some of the blame for the dissolution of his marriage, attributing some of the problems to him working too much.  He acknowledges that this may have contributed to his wife having an affair.  Even though he was having financial problems and fell behind in his child support payments, Mr. Marsh still tried to do everything he could to help his daughters and be a part of their lives.

Though he lacks a college education, Mr. Marsh is bright.  During conversation, his questions and answers are both intelligent and thoughtful.  Understandably, he is grappling with how he went from a being a loving father and ambitious businessman to sitting in jail.  Mr. Marsh is open to therapy and believes he would benefit from it.  He truly wants to address any issues he may have so they he can emerge from this case a better person.

**2(A).   The Need for the Sentence Imposed–to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

This is a very serious offense, as are many federal crimes.  Since sentencing the Defendant to  prison is the only real option available to the court, the issue becomes:  what length of sentence reflects the serious nature of the offense, yet is "not greater than necessary" to provide just punishment?  At age 41, Mr. Marsh has half of his life yet to live.  He will undoubtedly learn from this experience.  He already has.  Mr. Marsh has never spent any time in jail before.  As any normal person might expect, this experience has changed his life.

**2(B).   The Need for the Sentence Imposed–to Afford Adequate Deterrence to Criminal Conduct**

The sentence imposed in this case will be of sufficient length that anyone, including the Defendant, will know that Possession of Child Pornography is a severely sanctioned offense.

**2(C).   The Need for the Sentence Imposed–to Protect the Public from Further Crimes of the Defendant**

The Court can be assured the public will be safe from the Defendant for several reasons. First, the Defendant is facing a prison sentence that will keep the Defendant out of the public. Second, the Defendant has already learned his lesson.  For a bright, caring person without any real experience with the criminal justice system, it does not take long to learn that they never want to run afoul of the law again.  Finally, the Defendant will have to register as a sex offender, which will subject him to further public scrutiny well beyond any jail sentence while offering the public some measure of protection.

**2(D).   The Need for the Sentence Imposed–to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Mr. Marsh is a great candidate for rehabilitation.  He wants to participate in counseling to address any issues he may have that led to this aberrant behavior.  His age, intelligence, desire to reform, and relatively clean criminal record suggest that he would benefit greatly from any such treatment and present a low risk of recidivism.

**3.      The Kinds of Sentences of Available**

Prison appears to be the only available option.

**4.      The Kinds of Sentence and the Sentencing Range Established for the Instant Offense by the Sentencing Commission**

Because Mr. Marsh's Guideline range exceeds the statutory maximum of ten years for the instant offense, his Guideline range is 120 months.  This is due to the extremely high Guidelines for such an offense.  Although Mr. Marsh's base offense level begins at Level 18, his base offense level is dramatically enhanced by 15 levels, almost double the base offense level, after all the enhancements are added up.  He received:  a two level enhancement for possessing images of prepubescent minors; a five level increase because he traded for the images; a four level enhancement because some of the images depicted sadistic or masochistic conduct or other depictions of violence; a two level increase because the images were kept on a computer; and a five level enhancement because he possessed over 600 images.  Without these enhancement totaling 15 levels, the Defendant's Guideline range would be approximately 21-27 months.

While Mr. Marsh has admitted that he had some sadistic or masochistic images on his computer, he wants to stress to the Court that he was never interested in or specifically tried to acquire those types of images.  Rather, those images were sent to him was part of a trade in which images were sent to him without him knowing what type of image to expect in return.

Often times it was not until after he opened the file that he learned what was depicted in the image.

**5.      Any Pertinent Policy Statement**

See discussion above and below.

**6.      The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

While counsel understands that there are inherent differences in the federal and state criminal justice systems and the Court is not bound by what the States do, disparities between the two systems are a legitimate consideration in fashioning a reasonable sentence.  In Mr. Marsh's case, had he been prosecuted by the State of Michigan for the same conduct, he would be facing a drastically different sentence.  Under Michigan's law prohibiting the possession of child pornography, M.C.L. 750.145c(4), the statutory maximum is four years imprisonment and a $10,000.00 fine.  See Attached.  When this is taken into consideration, it becomes apparent that the Defendant's advisory Guideline range is greater than necessary to accomplish the objectives of 18 U.S.C. § 3553, given that the State of Michigan likely shares those same objectives yet imposes less prison time for the same offense conduct.

**7.      The Need to Provide Restitution to Any Victims of the Offense**

To the extent this factor is deemed relevant, the Defendant is more likely to make restitution outside of prison rather than in prison.

## IV.    Conclusion

The Defendant respectfully requests that this Court make the following findings of fact and conclusions of law:

1.    The Defendant's Guidelines, as calculated by the Probation and Pretrial Services Office, are correct with consideration of the Defendant's acceptance of responsibility but without consideration of the mitigating factors cited above;

2.    There is a sufficient basis for downward departure based on the mitigating factors cited above;

3.    The Guidelines are but one of several factors to be considered by the Court in sentencing the Defendant in this case, and finally;

4.    A sentence sufficient, but not greater than necessary, may be less than that provided for by the Guidelines range set forth in the PSI.

The Defendant having demonstrated a full acceptance of his guilt requests this Court to be lenient in the adjudication of his fate.

Respectfully submitted,


Dated:  January 5, 2007                    /s/ Gary K. Springstead
                                           Attorney for Defendant
                                           Springstead Law Offices, P.C.
                                           22 East Main Street
                                           Fremont, MI  49412
                                           (231) 924-3222